UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x
UNITED STATES OF AMERICA        :
                                :       Cr. No. 11-199 (CBA)
            v.                  :
                                :
ANASTASIO ROMERO-PEREZ,         :
                                :
            Defendant.          :
------------------------------------------------------x

## SENTENCING MEMORANDUM ON BEHALF OF ANASTASIO ROMERO-PEREZ

MORVILLO ABRAMOWITZ GRAND
  IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

*Attorneys for Defendant Anastasio Romero-Perez*

We respectfully submit this sentencing memorandum and supporting materials on behalf of Anastasio Romero-Perez in connection with his sentencing scheduled for November 13, 2013. For the reasons set forth below, we request that the Court impose a sentence of 175 months, which represents the 188-month period of imprisonment that is at the low end of Anastasio's Guidelines range, as reduced (with the government's consent) to provide credit for the approximately thirteen months that Anastasio spent incarcerated in a Mexican prison while awaiting extradition in this matter.

I. **PRELIMINARY STATEMENT**

As the Presentence Investigation Report ("PSR") and supporting letters from his family and friends make clear,[1] Anastasio has played an important role in his family and community, despite having faced significant hardships in Mexico. Anastasio grew up in extreme poverty. At the age of eight, in order to support his family, Anastasio was required to forego the already limited educational opportunities available to him, and instead began laborious work in the fields with his grandfather and siblings. Throughout the rest of his life, Anastasio continued to work in the fields, in various construction trades, and in other jobs that provided him with a semblance of an opportunity to support his family and children. The sentencing letters reflect that, for these work efforts and the responsibility that he showed towards his family, Anastasio was well-regarded by those in the simple and impoverished community in which he lived.

Nonetheless, due to the illegal conduct in this matter, as to which he has accepted responsibility and acknowledged his guilt, Anastasio now stands before the Court having been convicted of one count of violating 18 U.S.C. § 1591(b)(2). Anastasio greatly regrets the actions

---

[1] Originals or true and correct copies of letters and other documents submitted in support of this memorandum are attached hereto and cited as "Ex. __ (Document Name)." Sentencing letters that we have received on Anastasio's behalf appear behind each corresponding exhibit tab in their original Spanish, and then are followed by their English translation.

that have brought him to this point, and he entered his guilty plea with the understanding that doing so would result in a significant term of imprisonment.  In fact, the count to which Anastasio pleaded guilty carries a ten-year mandatory minimum, and, subject to a reduction for the time he has already served in a Mexican jail, the plea agreement precludes Anastasio from requesting a sentence below his applicable Guidelines range.  These are the inevitably serious consequences of cases such as this, and again, Anastasio recognizes and accepts that significant punishment must be imposed.

Nonetheless, as the Court assesses the relevant factors under 18 U.S.C. § 3553(a) in order to arrive at an appropriate sentence, we submit that several particular issues are of note.  First, in order to avoid causing any further hardship or difficulty to those impacted by his crime, Anastasio has elected to plead guilty.  He accepts responsibility for what he has done, and feels great remorse for his actions.  Second, although Anastasio does not in any way seek to excuse or justify his conduct, we note that his offense arises at least in part from the lack of educational and economic opportunity available to him, and from the grinding poverty that he and his family faced in rural Mexico.  Of course, not every person in Mexico who faces such poverty attempts to address their economic circumstances by profiting from the prostitution of others, but we submit on Anastasio's behalf that the circumstances which contributed to his offense are nonetheless relevant to the sentence to be imposed.  Third, even in the most serious of cases, a defendant is not and cannot be defined solely by his misdeeds.  There is more to Anastasio than the conduct that has brought him before the Court, and the simple but profound sentencing letters that his family members and neighbors have submitted on his behalf reflect the good that Anastasio has done in other aspects of his life.  Fourth, although the statute that he violated makes a substantial sentence inevitable, we submit that those impacted most by this sentence will

be Anastasio's family members, including his mother, his children, and others who played no role in the conduct at issue. These individuals will suffer greatly as a result of Anastasio's absence from their lives, and this is yet another relevant factor for the Court to take into account.

Based on the foregoing considerations, as well as the sentences imposed in similar cases and the other matters discussed herein, we submit that a total period of imprisonment of 188 months (which is made up of the 175 month sentence we propose here, plus the thirteen months that Anastasio already served in Mexico) is "sufficient, but not greater than necessary" to fulfill the purposes of sentencing. This sentence constitutes more than fifteen years' imprisonment, is substantially greater than the mandatory minimum sentence that the statute requires, and will be followed by prompt deportation. Such a sentence will amply satisfy considerations of punishment, specific deterrence, and general deterrence. It will separate Anastasio from his country and his family, deprive him of the ability to see beloved elderly relatives before they die, incapacitate him until he is well into his fifties, and send an obvious message that any benefits from the type of conduct at issue in this case will be far outweighed by the punishment that results. At the same time, the sentence we propose would properly take into account Anastasio's impoverished background, the positive impact he has had in other aspects of his life, the effect that his incarceration has had and will continue to have on his family, and the sentences imposed on defendants in comparable cases.

In sum, we submit that a sentence that totals 188 months' imprisonment represents an appropriate and careful balancing of the various considerations set forth in Section 3553(a), and we respectfully request the imposition of such a sentence in Anastasio's case.

## II. PERSONAL BACKGROUND

Anastasio Romero-Perez was born in San Miguel Tenancingo, Tlaxcala, Mexico on April 15, ▮ to Maria Perez-Perez and Agustin Romero-Calderon. (Pre-Sentence Report ("PSR") ¶ 55.)[2] Anastasio's father left his mother when Anastasio was only five years old. (*Id.* ¶ 56.) His father never subsequently provided any financial support to the family. (*Id.*) Anastasio's mother Maria provided what support she could for Anastasio, but the family had extraordinarily limited resources. (*Id.* ¶ 57.) When Anastasio was eight years old, his mother married Adrian Lopez-Sanchez, who helped raise Maria's children and was like a father to Anastasio. (*Id.*)

Despite the role that Anastasio's stepfather Adrian came to occupy in Anastasio's family, the poverty that afflicted Anastasio's family did not change. (*Id.* ¶¶ 56-57.) His mother could not afford to send him to school, and Anastasio never received any formal education. (*Id.* ¶ 69.) In fact, Anastasio has lived much of his life essentially illiterate, and he is able to read only haltingly and with much difficulty.

Due to his family's poverty, Anastasio began working at the age of eight, when he would go with his grandfather into the fields to cultivate vegetables, rice, and fruit. (*Id*. ¶¶ 57, 75.) Throughout the rest of his life, Anastasio transitioned between a variety of difficult, low-paying jobs. At around the age of fourteen, he began to work in construction (*id.* ¶ 74), but would return to the fields when there was no construction work. He subsequently worked as a ticket taker on a bus, and in a local factory, but returned to fieldwork or construction for intervals depending on the work that was available at the time. (*Id*. ¶¶ 72-73.)

---

[2] On September 23, 2013, the undersigned counsel provided the United States Probation Department (and the government) with a letter containing corrections to the PSR. To date, we have not received an amended PSR, or a response from the Probation Department regarding our letter. Accordingly, this sentencing submission cites to the original version of the PSR, and, when appropriate, relies upon the factual corrections that we have provided in our letter to Probation. Our letter to Probation is also attached to this submission as Exhibit 13.

- 4 -

Anastasio has three children, Juan Carlos Candelaria-Aguilar (age twenty), Jessica Romero-Blas (age nineteen), and A███ R███-B█ (age ten). (*Id*. ¶¶ 60-62.) Anastasio has provided for Jessica and maintains a good relationship with her. In fact, Anastasio raised and financially supported Jessica after Jessica's mother abandoned the family to be with another man. (*Id*. ¶ 61.) Anastasio also has a good relationship with his son Juan Carlos, who lives with his mother. (*Id*. ¶ 60.) Additionally, Anastasio provided for his youngest son A███ until the dissolution of Anastasio's relationship with A███'s mother, and Anastasio has not been able to see A███ ever since. (*Id*. ¶ 62.)

### III. SENTENCING FACTORS

Pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are advisory, and are simply the first factor that a court is to assess in determining a just and appropriate sentence in a given case. *United States v. Bonilla*, 618 F.3d 102, 110 (2d Cir. 2010). A court must also consider 18 U.S.C. § 3553(a), which provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]."

As the Second Circuit has explained, the excision of the provision in the Guidelines that had made the Guidelines mandatory places a new emphasis on the other enumerated sentencing factors of 18 U.S.C. § 3553(a). *See United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). Accordingly, in arriving at an appropriate sentence, a sentencing judge is free to consider, and indeed required to focus on, the history and characteristics of the particular defendant to be sentenced. *See* 18 U.S.C. § 3553(a)(1). Under Section 3553(a), courts must also consider the nature and circumstances of the offense and the need for the sentenced imposed to, among other things, provide just punishment for the offense, afford adequate general deterrence, and protect the public from future crimes of the defendant. 18 U.S.C. § 3553(a)(2).

Here, the good characteristics of Anastasio that his family and friends have described in their letters, the significant poverty that Anastasio experienced in Mexico, the negative effect that his incarceration will have on his loved ones, his deep remorse, and the sentences that have been imposed in comparable cases all show that a sentence of 188 months (reduced to 175 months to reflect Anastasio's time in custody in Mexico) is "sufficient, but not greater than necessary" to accomplish the goals of sentencing.

### A. The Advisory Guidelines Range

In the plea agreement, the government based its Guidelines calculation on U.S.S.G. § 2G1.3(a)(2), and arrived at a final offense level of 36. Given Anastasio's lack of any Criminal History points, the corresponding Guidelines range in the plea agreement is 188 to 235 months. In the PSR, Probation arrived at the identical Guidelines range of 188 to 235 months.[3]

Additionally, the government indicated in the plea agreement that it would not oppose a request that the sentence imposed be reduced by the period of time that Anastasio spent incarcerated in Mexico while awaiting extradition. As stated on the cover page of the PSR, Mexican authorities took Anastasio into custody on October 25, 2011, and he was extradited to the United States on December 10, 2012, which means that Anastasio's incarceration in Mexico lasted thirteen months and fifteen days. As noted above, the plea agreement precludes Anastasio from advocating for a sentence below the bottom end of the Guidelines range, aside from seeking a reduction equal to the duration of his incarceration in Mexico. We therefore request the imposition of a sentence of 175 months, and submit that such a sentence – which would result in a total period of imprisonment of fifteen years and eight months – more than adequately satisfies the Section 3553(a) factors.

---

[3] The PSR arrived at this figure by utilizing a different provision of the Guidelines than the government, but the final calculation is nonetheless the same.

B. **The Nature and Circumstances of the Offense**

Pursuant to the terms of his plea agreement with the government, Anastasio pleaded guilty to violating 18 U.S.C. § 1591(b)(2), which was a lesser-included offense within Count Five of the Superseding Indictment. More specifically, Anastasio acknowledged during his plea proceeding that in approximately 2008, he convinced a woman referred to in the indictment as Jane Doe #2 to work as a prostitute, despite knowing that she was not yet eighteen years of age. Anastasio further acknowledged making arrangements for Jane Doe #2 to be transported to Queens, New York, so that she could be a prostitute in this country.

C. **Anastasio's Personal History and Characteristics**

Anastasio regrets his conduct and realizes that he has only himself to blame. Indeed, Anastasio realizes the seriousness of what he has done, as well as the harm he has caused. He does not seek to minimize the nature of his actions or justify them in any way.

On Anastasio's behalf, however, we submit that his offense should be viewed in light of the circumstances of his life, including the significant poverty that he experienced. Pursuant to 18 U.S.C. § 3553(a), a court must consider the history and characteristics of the defendant in crafting an appropriate sentence. The twelve letters submitted on Anastasio's behalf describe someone who, despite his offense, is still known as a caring father, a hard worker, and a good neighbor. In fact, the comments of those who know Anastasio show his qualities beyond the instant offense. As Anastasio comes from a deeply impoverished area, the letters are inevitably brief, and reflect the limited educational background of Anastasio's family members and neighbors. However, even these short letters describe Anastasio in positive terms, and reflect Anastasio's nature as someone who was always there to help his family and those in his community.

### 1. **Anastasio's Dedication to his Family**

Despite his limited resources, Anastasio has long provided for his relatives, and his current incarceration has thus had a significant impact on his family. For example, Anastasio has provided critical financial and emotional support to his daughter Jessica, and both forms of this support have been sharply limited due to Anastasio's current incarceration. This is particularly painful to Jessica, as Anastasio raised Jessica on his own ever since Jessica's mother abandoned her at a young age. Jessica warmly describes her close relationship with Anastasio as follows:

> I grew up with [my father] since I was very little[.] [F]or me[,] he was a father and a mother at the same time because I never had my mother[.] [W]ell, my father was always minding my studies he always used to go to school when they h[e]ld parent-teacher meetings and well, also when he had a question about how I was doing . . . .

(Ex. 1 (Ltr. of Jessica Romero Blas).)

Anastasio is also very close to his mother, Maria Perez-Perez, who raised him. Anastasio's mother is seventy-six years old and in poor health. Jessica has quit her job and stays home with her grandmother to help take care of her. Given the lengthy sentence he is facing, Anastasio will almost certainly never see his mother again. She is his last remaining parent, as Anastasio's biological father left the family when Anastasio was five and subsequently passed away, and his step-father Adrian Lopez-Sanchez is deceased as well.

Anastasio's love and support goes well beyond Jessica and his mother, and extends to his other relatives as well. Those who know Anastasio confirm that he "was always concerned about his family." (Ex. 6 (Ltr. of Antonio de la Cruz Santiago).). Even with a sentence at the bottom end of the Guidelines range, Anastasio's children will not be able to have their father present for many of the critical events in their lives. As one of his friends sadly notes, Anastasio's "family is helpless without the father figure" (Ex. 3 (Ltr. of C. Jose Dionicio

Jimenez Guzman)), and while Anastasio's absence is an inevitable consequence of his offense, we submit that the impact his imprisonment will have on innocent family members should nonetheless be taken into account.

### 2. <u>Anastasio's Hard Work in Attempting to Lift His Family from Poverty</u>

As described above, Anastasio grew up in significant poverty. However, despite his lack of education, he has cared for and supported his family. Anastasio's hardships do not excuse his conduct, but his impoverished upbringing and lack of educational opportunities are relevant considerations under Section 3553(a). *United States v. Bennett*, 12-CR-285-1, 2013 WL 500584, at *1 (E.D.N.Y. Feb. 11, 2013) (Weinstein, J.) ("Poverty is no defense. But, it may be considered in weighing the collateral effects of a sentence such as incarceration . . . on a defendant's family.").

Letters written on Anastasio's behalf recognize his hard work to provide for his family. For example, his neighbors write that he is "[h]ard [w]orking [a]nd [h]onest" (Ex. 8 (Ltr. of Eufemia Romero-Garcia)), as well as "responsible with his [j]obs" (Ex. 5 (Ltr. of Jessica Contreras-Hernandez)). Another neighbor describes Anastasio's work as follows:

> [Anastasio] is a farmer by trade, as well as he shared and he rented some land tracts for growing corn as that is what can be grown, the lands are temporary, living off what can be harvested and on occasion he is hired to do various other farming jobs . . . as you can see he is a person with limited means he is a hard-working person, worried about work . . . .

(Ex. 3 (Ltr. of C. Jose Dionicio Jimenez Guzman)).

### 3. <u>Anastasio's Dedication to his Extended Family and Community</u>

Anastasio's dedication and concern for others extends beyond his immediate family to his extended family and community as well. In her letter to the Court, Anastasio's niece Yazmin recounts the concern and support that Anastasio showed for her:

- 9 -

> I lived with [Anastasio] since I was very little he took care of me because I didn't count with [my] Dad . . . . [Anastasio] took care of my studies and helped me finish Elementary and High School and by my Own will I didn't want to continue studying[,] however[,] he continued to give me his support . . . .

(Ex. 2 (Ltr. of Yazmin).)

Jessica Contreras Hernandez, a neighbor of Anastasio's, writes of Anastasio's contribution to the community, stating that

> Anastasio Romero Perez is a respectful person and kind with all the neighbors[.] [H]e doesn't disrespect anyone[.] He lends a helping hand when they asking him for favors . . . and [h]elps in any way he can . . . .

(Ex. 5 (Ltr. of Jessica Contreras Hernandez).)  Another neighbor, Juan Galindo Torres, explains in his letter to the Court that Anastasio "is a good person[,] he is not conflictive and has helped and [w]orked in our [n]eighborhood and our street."  (Ex. 9 (Ltr. of Juan Galindo Torres).)  Yet another neighbor notes that Anastasio "was a good fellow and[,] well[,] he also did favors for us[.]  [H]e never said no . . . ."  (Ex. 4 (Ltr. of Maria Celestina Perez Perez).).

These letters, like all of the letters submitted with this sentencing memorandum, provide a fuller picture of Anastasio.  They describe a man who, despite his crime, has worked hard, shown concern for his family and neighbors, and attempted to help others in legitimate ways that should be taken into account at sentencing.  *See*, *e.g.*, *United States v. Hernandez-Castillo*, No. 05 Cr. 1033, 2007 WL 1686686, at *5 (S.D.N.Y. June 7, 2007) ("Considering the history and characteristics of the defendant pursuant to § 3553(a)(1), the Court takes note of the Defendant's difficult childhood, the financial hardships endured by the Defendant and his family, and his continuing, legitimate efforts to help financially support: his family both in the United States and Mexico which presumably contributed to his eventual participation in the instant offense.").

### D. Sentences in Comparable Cases

Anastasio has accepted responsibility for his conduct and feels great remorse for the acts he has committed. Given the difficulties in his life, and the impact that his incarceration will have upon his family, a sentence at the low end of the Guidelines is appropriate. Moreover, the sentence that we propose here is within the advisory Guidelines range and is not in conflict with the sentences that have been imposed on other defendants in similar cases. *See United States v. Parris*, 573 F. Supp. 2d 744, 754 (E.D.N.Y. 2008) (comparing sentences in cases similar to that case to arrive at a just sentence under § 3553(a)).

A sentence at the bottom of the Guidelines range in this case is not inconsistent with other recent sentences for similar conduct. For example, in *United States v. Robinson*, 09-CR-794 (E.D.N.Y), the defendant Devon Robinson was convicted *after trial* (unlike Anastasio, who pleaded guilty and admitted his offense) of two counts of violating 18 U.S.C. § 1591(b)(2), which is the same statute as in Anastasio's case. At Robinson's sentencing in January 2011, Judge Gleeson imposed a term of imprisonment of 180 months, thereby sentencing the defendant to eight months less than the total amount of imprisonment we propose here. *See* Judgment, *United States v. Robinson*, 09-CR-794 (JG) (E.D.N.Y. Jan. 26, 2011). Similarly, in *United States v. Windley*, 10-CR-660 (D. Az.), the defendant was convicted of conspiring to engage in the sex trafficking of minors, and his actions actually resulted in the death of one such minor. Nonetheless, on May 9, 2013, the district court imposed a sentence of 180 months. *See, e.g.,* Judgment, *United States v. Windley*, 10-CR-660 (DGC) (D. Az. May 17, 2013).

In sum, a sentence of 175 months, with an additional thirteen months already spent in custody in Mexico, constitutes significant punishment, is within the advisory Guidelines, and is not inconsistent with the results in other cases.

### E. Purposes of Sentencing Pursuant to Section 3553(a)(2)

Finally, in determining the sentence for a given defendant, the Court must consider the need for the sentence imposed to, among other things, provide just punishment for the offense, promote general deterrence, and protect the public from future crimes of the defendant. 18 U.S.C. § 3553(a)(2). All of these considerations support a 175-month sentence.

As Anastasio acknowledges and we have indicated above, there is no doubt that the offense here is a serious one. However, a sentence at the low end of the Guidelines range is nonetheless a substantial penalty that is amply sufficient to reflect the seriousness of the offense. With a sentence of 175 months, Anastasio will spend, in total, over fifteen years separated from his family and his home country, will sleep behind bars every single night, and will lose even those modest freedoms and privileges that were available to him in impoverished rural Mexico.

A sentence of 175 months in custody will serve the goals of specific and general deterrence as well. In terms of specific deterrence, the thirteen months that Anastasio has spent in a Mexican jail and the more than ten months that he has spent at the Queens Private Correctional Facility have brought harsh consequences to Anastasio and his family. Moreover, Anastasio has been made acutely aware that United States law enforcement can and will reach out to Mexico in order to punish the kind of conduct in which he had engaged. He fully knows that the only way he can remain with his family from this point forward is to obey the law and foreswear the type of actions that brought him before this Court. The sentence we propose is thus more than sufficient to deter Anastasio from engaging in criminal conduct again.

With respect to general deterrence, more than fifteen yearsø imprisonment will plainly signal to others that the laws must be obeyed and will be enforced, regardless of whether a defendant is in the United States or has returned to his home country. In fact, no one who

follows this matter could look at Anastasio or his brothers, consider they time they have already served in prison and the many more years they still have to go, and reasonably conclude that this type of conduct is worth its tremendous cost.

## IV. CONCLUSION

For all of the reasons set forth above, we respectfully request that the Court impose a sentence at the low end of the Guidelines range and account for the time Anastasio spent incarcerated in Mexico, resulting in a sentence of 175 months.

Dated: New York, New York
       October 30, 2013

Respectfully submitted,

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

By: _____
Robert M. Radick
Christopher W. Robbins
565 Fifth Avenue
New York, NY 10017
Telephone: (212) 856-9600
Fax: (212) 856-9494

*Attorneys for Anastasio Romero-Perez*

-13-