## MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO***
LAWRENCE S. BADER
BENJAMIN S. FISCHER
CATHERINE M. FOTI
PAUL R. GRAND
LAWRENCE IASON
STEPHEN M. JURIS
JUDITH L. MOGUL
JODI MISHER PEIKIN
ROBERT M. RADICK***
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION
(212) 880-9558
rradick@maglaw.com

COUNSEL
RACHEL Y. HEMANI
JASMINE JUTEAU
BARBARA MOSES*

SENIOR ATTORNEY
THOMAS M. KEANE

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN CALIFORNIA AND WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN WASHINGTON, D.C.

January 17, 2014

**By ECF**

The Honorable Carol B. Amon
Chief United States District Judge
United States District Court for the
  Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Anastasio Romero-Perez,</u>
                Cr. No. 11-199 (CBA)

Dear Chief Judge Amon:

On behalf of Anastasio Romero-Perez, we write with respect to the government's letter dated November 26, 2013, as well as the December 4, 2013 letter that was submitted to the Court by the three attorneys from Skadden, Arps, Slate, Meagher & Flom who are representing the individuals identified as Jane Does Number 1 and 4. More specifically, we write to address the issue of whether the victims in this case should, when potentially delivering victim impact statements, be permitted to identify themselves in open court solely by their first names or as "Jane Does." This letter also addresses whether the Court should order restitution in light of the declarations of loss that were submitted by Jane Does Number 1 and 4.

### The Delivery of Victim Impact Statements Using First Names or "Jane Doe" Aliases

In arguing that victims who may wish to speak at sentencing should be permitted to refer to themselves as "Jane Doe" or use only their first names, the government primarily relies on a series of cases in which, in the context of a criminal trial, witnesses may be permitted to withhold personal identifying information due to fear of reprisals or concerns relating to humiliation and annoyance. Counsel for Jane Does Number 1 and 4 incorporate the government's legal arguments into their letter, and further assert that concerns regarding the safety of their clients – as well as the desire of their clients to

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Honorable Carol B. Amon
Page 2
January 17, 2014

move on with their lives – weigh in favor of allowing the Jane Doe victims to give impact statements in open court while withholding their full names.

On behalf of Mr. Romero-Perez, we do not object to the desire of victims in this matter to speak at sentencing without providing their full names in open court. As indicated in his sentencing memorandum and reflected by his guilty plea, Mr. Romero-Perez has great remorse for his conduct, and he does not wish to take any actions that might cause the victims in this matter further suffering or hardship. Nonetheless, given certain assertions that the government and counsel for Jane Does Number 1 and 4 advance in their submissions, one point warrants brief discussion.

In the letter that counsel for Jane Does Number 1 and 4 have submitted, there are repeated references to concerns for the "safety" of the victims. Counsel for Jane Does Number 1 and 4 state, for example, that "[t]he safety of our clients is our paramount concern." (Letter from Jennifer Smith, Danielle Gill, and Emma Glazer to the Court, dated Dec. 4, 2013 ("Smith *et al.* Letter"), at 1.) Counsel next express their belief that "disclosing the victims' identities at this stage of the proceedings would expose them to heightened threats of reprisal and would seriously jeopardize their safety and the safety of their families." (Id.) Finally, in further support of the notion that disclosure of victims' identities increases the chance of some form of violent retaliation, counsel state that their beliefs are

> shared by the victim advocacy groups and members of law enforcement who are knowledgeable about the particular circumstances of this case, as well as applicable authority on this issue.

(Id.)

Although we do not doubt the sincerity of the concern that counsel have for their clients in this matter, nothing in this case suggests that there is a reasonable likelihood of retaliation, let alone that any such risk would increase if the victims are identified at sentencing. The defendants have long known the identity of their accusers. The victims in this case were well known to the defendants, and in some instances had been involved in romantic relationships with the defendants for substantial periods of time. Moreover, during the period of their incarceration in Mexico, the defendants and their families were aware of the victims' identities, their home towns, and their family members. Yet in the entirety of the more than two years since the defendants were arrested in Mexico, there has not been a single incident or attempted incident of intimidation, retaliation, or violence against the victims or their families.

Moreover, although counsel for the victims vaguely assert that "members of law enforcement who are knowledgeable about the particular circumstances of this case" are concerned about the potential for retaliation against the victims (Smith *et al.* Letter, at 1),

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Honorable Carol B. Amon
Page 3
January 17, 2014

it is notable that at no point in its recent submission regarding the desire of the victims to proceed anonymously did the government raise the specter of violence against the victims. (See Letter from Assistant U.S. Attorney Taryn A. Merkl to the Court, dated Nov. 26, 2013 ("Gov't Letter").) The reality is simply this: the defendants in this case have long occupied a jail cell in Queens, will continue to be incarcerated in this country for a substantial period of time, and are destitute and largely illiterate. The government has already shown the defendants and their families that the United States has the power to reach out to Mexico, secure the arrests of those who violate United States law, and secure the extradition of those individuals to an American prison cell. It is thus no mere happenstance that neither the defendants nor their families have attempted or carried out any acts of retaliation, and there is no plausible reason to suspect that such retaliation would suddenly commence now.

Again, Mr. Romero-Perez does not object to the victims referring to themselves by their first names or as "Jane Does" in open court. However, the argument that Mr. Romero-Perez could or would retaliate against any of the Jane Does for making victim impact statements is an entirely speculative, unfounded, and inflammatory notion that should play no role in the sentencing proceeding in this matter.

### The Administering of the Oath and the Importance of Self-Identification Under Seal

While the foregoing discussion reflects Mr. Romero-Perez's position as to whether the victims should be required to identify themselves in open court, still unresolved are the no less important issues of whether the victims should be required to identify themselves at all, and whether they should be placed under oath when making victim impact statements to this Court. In fact, while the letter from the government argues against the disclosure of "victim identity information *in open court*" (Gov't Letter, at 4) (emphasis added), and the letter from counsel for Jane Does Number 1 and 4 urges that their clients not be required to "*publicly* disclose their full names" (Smith *et al.* Letter, at 1-2) (emphasis added), neither letter discusses whether a victim who wishes to address the Court should be permitted to do so with entire anonymity, or instead should at least take the most minimally invasive step of identifying himself or herself to the Court in a sealed portion of the proceeding.

In addressing this issue, we note that, when imposing sentence based in part upon a victim impact statement, a reasonable and moderate first step is to require the victim to be placed under oath. As the Supreme Court has stated,

> an experienced trial judge . . . daily faces the difficult task of imposing sentences, [and] has a vital need for accurate information about a defendant and the crime he committed . . . .

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Honorable Carol B. Amon
Page 4
January 17, 2014

Ramdass v. Angelone, 530 U.S. 156, 194 (2000) (quoting Gregg v. Georgia, 428 U.S. 153, 190 (1976)). The administration of an oath or affirmation is a valuable means of ensuring the receipt of such accurate information, for as Judge Glasser wrote in Ray v. United States, No. 04 CV 0013 (ILG), 2004 WL 1243173 (E.D.N.Y. Apr. 5, 2004),

> it cannot be gainsaid that having taken the oath, the fear of being indicted for perjury may inhibit false testimony and serve the integrity of the judicial process.

Id. at *2 (quoting Simon v. Safelite Glass Corp., 943 F. Supp. 261, 266 (E.D.N.Y. 1996)) (internal quotation marks omitted). See also United States v. Turner, 558 F.2d 46, 50 (2d Cir. 1977) (describing the oath or affirmation as "designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words").

Moreover, it is not merely the administering of an oath that serves to ensure the truthfulness of statements made to a sentencing court, but also the risk that any untruthful statements will subject a witness to the penalties of perjury. See, e.g., Diaz v. Mazzuca, No. 00 Civ. 4843 (SAS), 2001 WL 170662, at *3 (S.D.N.Y. Feb. 21, 2001) (Scheindlin, J.) (administering the oath "impress[es] [the witness] with the seriousness of the matter and guard[s] against the lie *by the possibility of a penalty for perjury*") (emphasis added) (quoting Maryland v. Craig, 497 U.S. 836, 845-46 (1990)). In fact, as one court has recently noted, "[w]ithout the teeth of the penalty for perjury, the oath becomes nothing more than an empty recital." United States v. Banki, No. 10 Cr. 08 (JFK), 2010 WL 1063453, at *2 (S.D.N.Y. Mar. 23, 2010).

Here, the sentencing that Mr. Lopez-Perez faces in this matter is of grave consequence to him, his family, and his future. In order to ensure truthful statements at his sentencing, the oath should be administered, and any victim who wishes to speak should be required to identify herself to the Court using her true name. Otherwise, if a victim is allowed to proceed without being placed under oath, and provides her statement in an anonymous matter, the gravity and importance of the proceeding would be significantly undermined. Moreover, the use of merely a first name, or a fabricated name such as "Jane Doe," simply is not consistent with the seriousness of the occasion, deprives the Court of the witness' true identity, and may cause the witness to believe that false statements can be made with impunity, thereby eviscerating the purpose of the oath in the first place. And, given that Mr. Lopez-Perez is not suggesting that the victims should identify themselves in public – but rather that they merely provide the Court with their names at sidebar in a sealed portion of the proceeding – the administering of the oath and the providing of true names would not implicate the privacy concerns or other

Morvillo Abramowitz Grand Iason & Anello P.C.

The Honorable Carol B. Amon
Page 5
January 17, 2014

considerations that the government and counsel for the victims have discussed in their letters.[1]

### Restitution

      The final point raised in the government's letter of November 26, 2013 relates to the declarations of loss that certain victims have submitted, and the government's description of the law regarding restitution in sex trafficking cases. With respect to this issue, we note that Mr. Romero-Perez entered a guilty plea to a lesser-included offense of Count 5 of the indictment, for which the victim is referred to as Jane Doe Number 2. (See Presentence Investigation Report ¶ 1.) However, Jane Doe Number 2 has not submitted a declaration of loss, and because restitution is limited to the offense of conviction, see Hughey v. United States, 495 U.S. 411 (1990), there is no basis for ordering restitution as to Mr. Romero-Perez.

                                                    Respectfully submitted,

                                                    Robert M. Radick
                                                    Christopher Robbins

cc:     Assistant U.S. Attorney Taryn Merkl (by email and ECF)
          Jennifer L. Smith, Esq. (by email)
          Danielle Gill, Esq. (by email)
          Emma S. Glazer, Esq. (by email)
          Peter Kirchheimer, Esq. (by email and ECF)
          Florian Miedel, Esq. (by email and ECF)

---

[1] With respect to the Crime Victims' Rights Act ("CVRA"), which the government and counsel for Jane Does Number 1 and 4 cite in their letter, the statute provides a victim the right to be "reasonably heard" at sentencing. 18 U.S.C. § 3771(4). There is nothing unreasonable under the circumstances about placing the victims under oath in a sealed portion of the proceeding, especially given that their names are already known to the defendants, testimony in sentencing hearings in this district is routinely given under oath, and the "Declarations of Victim Loss" that were previously provided to the Probation Department in this matter contain the true names of the victims and were sworn to under the penalty of perjury. Moreover, we recognize that certain courts have held that the CVRA does not *require* victims to be placed under oath or to swear to the truth of victim impact statements. See, e.g., United States v. Bolze, 444 Fed. Appx. 889, 891-92 (6th Cir. 2012); United States v. Grigg, 434 Fed. Appx. 530 (6th Cir. 2011). However, such cases come from outside the Second Circuit, are not binding on this Court, and in any event, do not speak to the fundamental issue of whether a sentencing court should attempt to ensure the accuracy of the information it receives by the simple step of administering an oath or affirmation to a victim who is identified by her true name.